UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

DUANE A. DANCE, LEON DELAIN, DARRELL RUFFIN, and NATASHA POTEAT

CV 12 4884

Plaintiffs,

-against-

**COMPLAINT**

CAPT. ANDERSON, JOHN DOES #1-3, each in their individual capacities, and THE CITY OF NEW YORK,

COGAN, J.

U.S. DISTRICT COURT EASTERN DISTRICT OF NEW YORK
2012 OCT -1 PM 2:41
FILED CLERK

Defendants.

Demand for Jury Trial

-----------------------------------------------------------X

Plaintiffs Duane A. Dance, Leon Delain, Darrell Ruffin, and Natasha Poteat, by and through their attorneys LeBow & Associates, PLLC, complain of the Defendants, and each of them, as follows:

## I. PRELIMINARY STATEMENT

Plaintiffs Duane A. Dance, Leon Delain, Darrell Ruffin, and Natasha Poteat bring this action under 42 USC §§1983 and 1988 to redress Defendants' violations of the rights and immunities secured to Plaintiffs by the United States Constitution. Defendants other than the City of New York were New York City Police Department officers acting under color of state law. The Plaintiffs allege that the Defendants raided their house, causing substantial damage, pointed guns at them without provocation or justification, falsely arrested them, and maliciously prosecuted them. Plaintiffs further allege that Defendant Anderson demonstrated through his individual acts and omissions a deliberate indifference towards the constitutional rights of the Plaintiffs and others, which acts and omissions directly and proximately caused the violations of the Plaintiffs' Fourth Amendment rights complained of herein, specifically by failing to properly supervise,

train, and discipline subordinate officers under his direct supervision and control. Plaintiffs assert a claim against the City of New York based upon entity liability, and allege that the City of New York maintained certain policies, customs, and practices regarding the hiring, training, supervision, and disciplining of police officers that demonstrated a deliberate indifference towards the constitutional rights of the Plaintiffs and others, and that directly and proximately caused the violations of Plaintiffs' Fourth Amendment rights complained of herein. The Plaintiffs seek compensatory damages from Defendants Anderson, Does #1-3, and the City of New York, and punitive damages from Defendants Anderson and Does #1-3.

## II. JURISDICTION AND VENUE

1. This Court has federal question jurisdiction over the federal civil rights claims asserted herein against Defendants Anderson, Does #1-3, and the City of New York pursuant to 28 U.S.C. §§1331 and 1343(a)(3). Venue in this district is proper because the events giving rise to the claims described herein occurred in the Eastern District of New York.

## III. PARTIES

2. At all times relevant herein, Plaintiffs Dance, Poteat, Ruffin, and Delain were residents of 298 Herkimer St., Brooklyn, NY 11216 and citizens of the United States.

3. At all times relevant herein, Defendants Anderson and Does #1-3 were police officers employed by the New York City Police Department ("NYPD"), and assigned to the 75th Precinct in the East New York section of Brooklyn. On information and belief, Anderson was Does #1-3's supervising officer.

4. At all times relevant herein, the City of New York was a municipal corporation existing under the laws of the State of New York. As such, it maintains a police department, and has enacted

rules, regulations, and policies as well as maintaining customs and practices concerning the hiring, termination, training, discipline, and conduct of the officers it employs.

## IV. STATEMENT OF FACTS

5. At all times relevant herein, Plaintiffs Dance, Poteat, Ruffin, and Delain were residents of a house located at 298 Herkimer St., Brooklyn, NY 11216. James Pratt also lived in the house.

6. At all times relevant herein, Defendants Anderson and Does #1-3 were NYPD officers assigned to the 75th Precinct.

7. On the evening of August 11, 2010, Dance and Poteat were on the second floor of the house, while Delain and Ruffin were on the first floor, and Pratt was in the basement.

8. On information and belief, at or around 11:00 pm, Dance and Poteat were asleep in their apartment when they awoke to what sounded like an attempted forced entry into their building.

9. On information and belief, Poteat dialed 911 and told the operator about the noises and that she thought there were intruders.

10. On information and belief, during the next hour, Dance and Poteat did not hear any more sounds resembling intruders or a forced entry, and they waited for the police to arrive.

11. On information and belief, at or around 12:00 am, Poteat called 911 again to tell them that the police had not arrived. The operator told Poteat that the police had come, but that she would also send another vehicle to the address.

12. On information and belief, at or around 12:05 am, the Plaintiffs still had not heard from the police when they heard more sounds that sounded like intruders in their home.

13. On information and belief, Plaintiff Dance emerged from his bedroom and attempted to confront the intruders as they climbed the stairs of the building. Defendants Anderson and Does #1-3, who were dressed in plain clothes, held Plaintiff Dance at gunpoint, put him in handcuffs,

and brought him down the stairs, all without showing Dance police badges or informing him of the charges against him. When Dance asked why he was being handcuffed, one of the officers shoved him.

14. On information and belief, Defendants Anderson and Does #1-3 brought Dance into the first floor apartment, where they pointed guns at Plaintiffs Delain and Ruffin, and handcuffed them, and then went into the basement, pointed guns at Pratt, and handcuffed him, and brought him up to the first floor apartment. Delain, Pratt, or Ruffin were not shown police badges or informed of the charges being made against them.

15. On information and belief, Defendant Anderson then questioned Plaintiffs Dance, Delain, and Ruffin, and also Pratt, and demanded the immediate surrender of any marijuana and guns hidden in the apartment. Dance, Delain, Ruffin, and Pratt informed Anderson that they were not in possession of any such items.

16. On information and belief, Defendants Anderson and Does #1-3 then conducted a search of the premises, causing substantial damage to the Plaintiffs' house and personal property. During the search, the Defendants showed a great deal of disregard for the Plaintiffs' property as they broke several windows and caused damage to some of the doors. In addition, the Defendants damaged Dance's family heirlooms that his grandfather brought back from his service in World War II. On information and belief, Defendants did not find any illegal drugs or weapons in the apartment.

17. On information and belief, while in the second floor bedroom with Poteat, one of the officers was looking in her personal drawers, and told her to go downstairs. Plaintiff Poteat attempted to call 911 again, but one of the officers grabbed her phone to prevent her from doing so.

Defendant Anderson then commanded Doe #1 to bring Plaintiff Poteat outside, and directed Does #2 and 3 to place Plaintiffs Dance, Delain, and Ruffin, along with Pratt, into the police van.

18. On information and belief, after Does #2 and 3 had put Plaintiffs Dance, Delain, and Ruffin, along with Pratt, in the police van, Doe #1 brought Plaintiff Poteat downstairs and put her in a police car. Plaintiff Poteat asked Doe #1 why she was being arrested, and he responded by flashing his badge and answering that he "didn't know" and that "it was up to Captain Anderson." Poteat spent 45 minutes handcuffed in the back of the car.

19. On information and belief, the police van with Plaintiffs Dance, Delain, and Ruffin, and also Pratt, and the police car with Plaintiff Poteat, both went to the 79th precinct. None of the Plaintiffs were informed of any charges against them.

20. On information and belief, all four Plaintiffs were placed in holding cells overnight. Poteat was asked to sign a blank paper, and she refused to sign. Plaintiffs Dance and Poteat were released the next morning, and Plaintiffs Delain and Ruffin and also Pratt were released later that day. Duane, Delain, Ruffin, and Pratt received papers appearing to charge them for marijuana possession and stating a court date, but when they appeared in court on the date stated in the papers, they found that the charges had been dismissed.

## V. FIRST CAUSE OF ACTION - CIVIL RIGHTS AND CONSTITUTIONAL VIOLATIONS

21. The Plaintiffs repeat, reiterate, and reallege each and every allegation contained in paragraphs 1 through 20 of this Complaint with the same force and effect as though fully set forth herein.

22. As a result of the actions of Defendants Anderson and Does #1-3, which occurred on or about August 12, 2010, the Plaintiffs were deprived of their rights under the United States Constitution

and federal civil rights law. Plaintiff's rights are secured by the Fourth Amendment to the United States Constitution and 42 U.S.C. §1983.

23. The actions of Defendants Anderson and Does #1-3 were committed under the color of law and were intentional and willful.

24. On or about August 12, 2010, Defendants Anderson and Does #1-3 intended to confine Plaintiffs.

25. On or about August 12, 2010, the Plaintiffs were conscious of being confined.

26. On or about August 12, 2010, the Plaintiffs at no time consented to being confined by Defendants Anderson and Does #1-3, but once they became aware that Anderson and Does #1-3 were police, they cooperated with them because they were NYPD officers acting in an official capacity.

27. On or about August 12, 2010, Defendants (1) did not find drugs or weapons anywhere in Plaintiffs' house, (2) did not have any other reason to believe that any of the Plaintiffs had otherwise possessed drugs, and (3) did not have any other reason to believe that any of the Plaintiffs had committed any other crime.

28. In view of the fact that Anderson and Does #1-3 did not possess sufficient information for a reasonable person to believe that any of the Plaintiffs had possessed a controlled substance, and had no reason to believe that any of the Plaintiffs had committed any other crime, they therefore did not possess knowledge sufficient for a reasonable person to believe that each of the Plaintiffs was committing or had committed a crime at the time of his or her arrest.

29. In view of the fact that Defendants Anderson and Does #1-3 did not possess information upon which a reasonable person could have believed that each of the Plaintiffs had committed or was

committing a crime at the time of arrest, Defendants Anderson and Does #1-3 did not have probable cause to arrest and confine any of the Plaintiffs.

30. That neither on nor about August 12, 2010, nor at any other relevant time herein, did Defendants Anderson and Does #1-3 possess a warrant for any of the Plaintiffs' arrest and confinement.

31. That neither on nor about August 12, 2010, nor at any other relevant time herein, did such a warrant for any Plaintiff's arrest and confinement exist.

32. In view of the fact that Defendants Anderson and Does #1-3 intended to confine the Plaintiffs, the Plaintiffs were conscious of their confinement, the Plaintiffs did not consent to their confinement, and the confinement was not privileged since it was not conducted pursuant to a warrant or probable cause, the Plaintiffs' confinement was therefore unlawful and actionable under 42 U.S.C. §1983.

33. The actions of Defendants Anderson and Does #1-3 amounted to false arrest and false imprisonment under 42 U.S.C. §1983 and the Fourth Amendment of the United States Constitution.

34. As a direct and proximate result of the Plaintiffs' false arrest and false imprisonment, the Plaintiffs were caused to suffer a loss of freedom and liberty, great mental anguish, emotional distress, and public humiliation, and were further caused to experience fear of physical harm and violence.

35. On or about August 12, 2010, Anderson or Does #1-3 initiated charges against Plaintiffs Dance, Delain, and Ruffin for possession of marijuana.

36. At some time after August 12, 2010, the charges against Plaintiffs Dance, Delain, and Ruffin were dropped.

37. On or about August 12, 2010, Defendants did not find marijuana anywhere in Plaintiffs' house, and did not have any other reason to believe that any of Plaintiffs Dance, Delain, and Ruffin had otherwise possessed marijuana.

38. In light of the fact that Anderson and Does #1-3 did not possess sufficient information for a reasonable person to believe that Plaintiffs Dance, Delain, and Ruffin had possessed marijuana, they therefore did not possess knowledge sufficient for a reasonable person to believe that any of those Plaintiffs had committed the crime of possession of marijuana at the time of the charges, and they did not have probable cause to charge any of Plaintiffs Dance, Delain, and Ruffin with that crime.

39. Defendants Anderson and Does #1-3 initiated charges against Plaintiffs Dance, Delain, and Ruffin due to seeking retaliation against those Plaintiffs, or otherwise other than for the motive of obtaining justice in accordance with the law.

40. Defendants Anderson and Does #1-3's initiation of criminal proceedings against Plaintiffs Dance, Delain, and Ruffin on the above charges without probable cause and with a motive other than obtaining justice in accordance with the law was an act of actual malice against Plaintiff.

41. Plaintiffs Dance, Delain, and Ruffin suffered post-arraignment restrictions on their liberty when they had to return to court before the charges against them were finally dropped.

42. As a direct and proximate result of Plaintiffs Dance, Delain, and Ruffin's malicious prosecution, those Plaintiffs were caused to suffer a loss of freedom and liberty, great mental anguish, emotional distress, and public humiliation, and were further caused to experience fear of physical harm and violence, and to incur attorney's fees and expenses.

43. The actions of Defendants Anderson and Does #1-3 amounted to malicious prosecution under 42 U.S.C. §1983 and the Fourth Amendment of the United States Constitution.

44. On or about August 12, 2010, Defendants Anderson and Does #1-3 threatened the Plaintiffs at gunpoint while arresting the Plaintiffs and conducting a search of their house.

45. On information and belief, the Plaintiffs did not at any time pose a threat to the safety of the officers or others on the scene, and could not reasonably be seen as having posed such a threat based on their actions or based on any crime they were suspected to have committed.

46. On information and belief, the Plaintiffs did not resist arrest, and complied with the officers' commands when the officers tried to handcuff them.

47. On information and belief, no gun was found in the Plaintiffs' house, nor did Anderson or Does #1-3 have any reasonable belief that any of the Plaintiffs possessed a gun.

48. In light of the above, Defendants Anderson and Does #1-3's use of force against the Plaintiffs by pointing guns at them was not objectively reasonable, was excessive, and violated Plaintiffs' Fourth Amendment rights.

49. The actions of Defendants Anderson and Does #1-3 amounted to excessive force under 42 U.S.C. §1983 and the Fourth Amendment of the United States Constitution.

50. As a direct and proximate result of Anderson and Does #1-3's use of excessive force against the Plaintiffs, the Plaintiffs were caused to suffer great mental anguish and emotional distress, and have continued to experience post-traumatic stress and extreme fear of police officers.

## VI. SECOND CAUSE OF ACTION- STATE LAW PROPERTY DAMAGE

51. The Plaintiffs repeat, reiterate, and reallege each and every allegation contained in paragraphs 1 through 50 of this Complaint with the same force and effect as though fully set forth herein.

52. On August 12, 2010, Anderson and Does #1-3 caused substantial damage to Plaintiffs' house, breaking several windows, causing damage to some of the doors, and damaging Dance's family

heirlooms that his grandfather brought back from his service in World War II.

53. On information and belief, Anderson and Does #1-3 did not find any drugs or weapons in Plaintiffs' house.

54. On information and belief, Anderson and Does #1-3 intentionally and willfully damaged Plaintiffs' house by using force far in excess of what would be reasonably necessary to perform a search of the house for drugs and weapons.

55. As a direct and proximate result of Anderson and Does #1-3's actions, Plaintiffs' house sustained substantial damage, and Dance's family heirlooms with great sentimental value were also damaged.

## VII. THIRD CAUSE OF ACTION
## SUPERVISORY LIABILITY

56. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 55 of this Complaint with the same force and effect as though fully set forth herein.

57. That at all times relevant herein, Defendant Anderson was the supervising officer of, and/or had supervisory authority over, Does #1-3.

58. Defendant Anderson participated in the constitutional violations committed by Does #1-3 during the incident herein.

59. As a result of the actions of Defendant Anderson, which began prior to August 12, 2010, the Plaintiffs were deprived of liberty and freedom without probable cause, in violation of the rights and immunities secured to them by the Fourth Amendment of the United States Constitution and federal civil rights law. The acts and omissions of Anderson were committed under the color of law, and were intentional and willful.

60. The unlawful acts and omissions complained of herein were proximately caused by Anderson's deliberate indifference towards protecting members of the public from false arrests, false charges, malicious prosecutions, and excessive force by police officers under his command, as evidenced by his inadequate training, supervising, and disciplining of police officers under his command.

61. That Anderson had supervisory authority over, Does #1-3, and accordingly, either knew or should have known about the unlawful actions and violations of suspects' constitutional rights engaged in by Does #1-3, and he was grossly negligent in his supervision of Does #1-3, and he failed to act to stop Does #1-3 from continuing their unconstitutional acts and practices, and thereby acted with deliberate indifference towards the constitutional rights of the Plaintiffs and other citizens who would foreseeably come into contact with those officers.

62. As a result of Defendant Anderson's deliberate indifference towards protecting members of the public from false arrests, false charges, malicious prosecutions, and excessive force by police officers under his command, as evidenced by his inadequate training, supervising, and disciplining of Does #1-3, from a date beginning prior to August 12, 2010 and onwards, the Plaintiffs were unlawfully arrested, falsely charged, maliciously and unlawfully prosecuted, and subjected to excessive force.

63. As a direct and proximate result of Anderson's deliberate indifference to the constitutional rights of the Plaintiffs and other citizens, while Anderson was acting under color of law, the Plaintiffs suffered a loss of their freedom and liberty through the deprivation of their rights under the Fourth Amendment to the United States Constitution, endured great mental anguish and emotional distress, suffered public humiliation and experienced fear of violence and harm, experienced post-traumatic stress, and were caused to incur attorney's fees and other expenses.

**VIII. FOURTH CAUSE OF ACTION-**
**ENTITY LIABILITY**

64. The Plaintiffs repeat, reiterate, and reallege each and every allegation contained in paragraphs 1 through 63 of this Complaint with the same force and effect as though fully set forth herein.

65. On information and belief, responsible officials of the City of New York maintained customs, policies, and practices regarding the supervision and/or training of NYPD officers that led to the deprivations of Plaintiff's Fourth Amendment rights as alleged herein.

66. Responsible officials of Defendant City of New York knew or should have known that if they failed to supervise or train NYPD officers effectively so as to prevent them from violating the constitutional rights of individuals by making unlawful arrests and bringing false charges, the obvious consequence would be that some officers would nonetheless engage in such conduct for various reasons other than to achieve justice in accordance with the law, such as to retaliate against certain individuals, to make arrests and secure prosecutions in order to advance their careers, to gain media attention by arresting high-profile suspects, or to obtain a prosecution when an officer believes that a defendant is guilty but the evidence against that defendant is not sufficient to establish probable cause.

67. In light of the above, responsible officials of Defendant City of New York knew to a moral certainty that NYPD officers would frequently confront situations in which there were powerful incentives to make unlawful arrests or bring false charges.

68. Responsible officials of Defendant City of New York knew that when NYPD officers confront situations in which there were powerful incentives to make unlawful arrests or bring false charges, if those officers are properly supervised and disciplined they would almost always be deterred from making unlawful arrests or bringing false charges due to the understanding that they would be held

liable if they do so, and if those officers were properly trained, they would be fully aware of (A) when it is legal to arrest and charge a suspect and the proper procedures for carrying out an arrest, (B) their responsibilities under the law to make only lawful arrests and bring only truthful charges justified by the available evidence, and (C) the consequences they would face for false charges or unlawful arrests.

69. Responsible officials of Defendant City of New York knew that the consequence of NYPD officers making unlawful arrests or bringing false charges would be the deprivation of the constitutional rights of citizens, such as unlawful arrests, malicious prosecutions, and wrongful imprisonment of citizens, thereby violating those citizens' Fourth Amendment rights.

70. In light of the fact that responsible officials of Defendant City of New York knew or should have known that if they failed to supervise the officers of the NYPD effectively so as to prevent them from violating the constitutional rights of individuals by making unlawful arrests and bringing false charges, the obvious consequence would be that some officers would make unlawful arrests and bring false charges for various reasons other than achieving justice in accordance with the law, said officials had a duty to supervise and/or train NYPD officers effectively, and said officials' failure to do so represents a deliberate indifference to the constitutional rights of the Plaintiffs and other individuals who were unlawfully arrested or falsely charged.

71. As a direct and proximate result of the aforesaid acts of responsible officials of Defendant City of New York, the Plaintiffs were falsely arrested and wrongfully charged, and sustained a loss of freedom and liberty, great mental anguish, emotional distress, and public humiliation, and Plaintiffs Dance, Delain, and Ruffin were forced to return to court before the charges against them were dropped, and also had to incur attorney's fees and expenses.

72. Responsible officials of Defendant City of New York knew or should have known that if they failed to supervise or train officers of the NYPD effectively so as to instruct them as to when it would be acceptable to point guns at individuals, and to deter them from doing so when not warranted, the obvious consequence would be that some officers would nonetheless point their guns at individuals for reasons that are not legally permissible and that would violate the constitutional rights of individuals, for reasons such as to remove any chance that a suspect will fail to comply with the officer's orders, or to induce a suspect into confessing.

73. Responsible officials of Defendant City of New York knew that when NYPD officers confront situations in which there were powerful incentives to point their guns at suspects when arresting them, if those officers were properly supervised and disciplined they would almost always be deterred from pointing their guns at suspects in situations where it is not legally permissible, due to the understanding that they would be held liable if they do so, and if those officers were properly trained, they would be fully aware of (A) when it is permissible to point a gun at a suspect, (B) their responsibilities under the law to not point guns at suspects in other cases, and (C) the consequences they would face for doing so.

74. Responsible officials of Defendant City of New York knew that the consequence of NYPD officers pointing guns at suspects without legal justification would be the deprivation of the Fourth Amendment rights of those suspects.

75. In light of the fact that responsible officials of Defendant City of New York knew or should have known that if they failed to train and supervise the officers of the NYPD effectively so as to prevent them from violating the constitutional rights of individuals by improperly pointing guns at suspects when arresting them, the obvious consequence would be that some officers would point guns at suspects for various reasons that are not permitted under law and thereby violate those

suspects' constitutional rights, said officials had a duty to supervise and train officers of the NYPD effectively, and said officials' failure to do so represents a deliberate indifference to the constitutional rights of Plaintiffs and other individuals who were victims of excessive force through having guns pointed at them.

76. The failure of responsible officials of Defendant City of New York to respond in a timely and effective fashion to properly supervise and/or discipline Defendants so as to prevent them from violating the constitutional rights of individuals by improperly pointing guns at them signifies a policy or custom of inaction by those officials, representing deliberate indifference to the constitutional rights of the Plaintiffs.

77. In light of the fact that responsible officials of Defendant City of New York knew or should have known that if they failed to train and supervise the officers of the NYPD effectively so as to prevent them from violating the constitutional rights of individuals by pointing guns at them in situations where doing so was legally impermissible, the obvious consequence would be that some officers would point guns at suspects for impermissible reasons, such as (A) to guarantee a suspect's immediate and total compliance despite the fact that the suspect's actions and the situation did not justify pointing a gun at that suspect, (B) to retaliate against a suspect for actions alleged to have been committed by the suspect, or (C) to intimidate a suspect into being more likely to confess to have committed a crime regardless of the suspect's actual guilt, said officials had a duty to supervise and/or train NYPD officers effectively, and said officials' failure to do so represents a deliberate indifference to the constitutional rights of Plaintiffs and other individuals who undergo experiences where NYPD officers point guns at them improperly.

78. As a direct and proximate result of the aforesaid acts of responsible officials of Defendant City of New York, the Plaintiffs' Fourth Amendment Rights were violated, and they suffered great

mental anguish, emotional distress, and public humiliation, and continue to suffer post-traumatic stress.

79. As a result of the foregoing, the Plaintiffs sustained the damages previously described, and seek compensatory damages from the City of New York.

WHEREFORE Plaintiff demands judgment against Defendants Anderson and Does #1-3 in the amount of One Million Dollars ($1,000,000.00) in compensatory damages and One Million Dollars ($1,000,000.00) in punitive damages on the First and Second causes of action, against Defendant Anderson in the amount of One Million Dollars ($1,000,000.00) in compensatory damages and One Million Dollars ($1,000,000.00) in punitive damages on the Third cause of action, and One Million Dollars ($1,000,000.00) in compensatory damages against the City of New York on the Fourth cause of action, together with attorneys' fees, and the costs and disbursements associated with bringing this action.

Dated: New York, New York
September 28, 2012

Respectfully submitted,
LEBOW & ASSOCIATES, PLLC

*/s/ James B. LeBow*

James B. LeBow, Esq. (JL4535)
570 Lexington Avenue, 16th Floor
New York, New York 10022
Tel. (212) 868-3311
Fax (646) 619-4555